# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

KHALID SHAMSUD'DIYN, #330-816,　　　*

Plaintiff　　　*

v　　　*　　Civil Action No. ELH-17-3271

STEPHEN T. MOYER, Secretary DPSCS and　*
SCOTT S. OAKLEY, Executive Director,
　Inmate Grievance Office,　　　*

Defendants　　　*

\*\*\*

## MEMORANDUM OPINION

The self-represented plaintiff, Shamsud'Diyn, is an inmate in the Maryland Division of Correction ("DOC").[1] He has filed suit (ECF 1), alleging that while housed at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, he was denied a timely rule violations hearing, in violation of Maryland administrative and regulatory authority, and that his placement on segregation pending the hearing amounts to a denial of his constitutional right of access to the courts. *Id.* at 1, 1-3.[2] In plaintiff's supplement to the Complaint, he adds that he was denied access to the courts because his legal dictionary and other personal property items were confiscated, in retaliation for his exercise of his constitutional right of access to the courts. ECF 4 at 2.

Shamsud'Diyn seeks injunctive relief mandating dismissal of the rule violation proceedings (ECF 1 at 8); the return of his legal papers (ECF 4 at 2); and compensatory and punitive damages for each day spent in segregation beyond the seven-day period provided by 12.02.27.12B(3) of the Code of Maryland Regulations ("COMAR"). ECF 1 at 2-3. He also

---

[1] The Clerk is directed to correct the spelling of plaintiff's name.

[2] This opinion cites to pagination as it appears on the court's electronic docketing system.

requests the return of documents allegedly confiscated in connection with his transport to a court appearance on November 15, 2017, some of which he contends were relevant to this case. ECF 4 at 1-2.[3]

Defendant Stephen T. Moyer, the Secretary of the Department of Public Safety and Correctional Services ("DPSCS"), has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 8), along with a memorandum (ECF 8-1) (collectively, the "Motion") and exhibits. Plaintiff opposes the Motion (ECF 12) and has filed a memorandum (ECF 12-1) (collectively, the "Opposition"). ECF 12. Additionally, in response to this court's Order (ECF 11), defense counsel has responded to Shamsud'Diyn's concerns with regard to missing paperwork (ECF 13), prompting Shamsud'Diyn's reply. ECF 14.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendant Scott Oakley shall be DISMISSED[4] and summary judgment shall be GRANTED in favor of defendant Moyer.

## I. Contentions

A.  Plaintiff's Allegations

Shamsud'Diyn contends that on September 27, 2017, he was charged with Inmate Rule Violations in Case Number 2017-070. ECF 1 at 1. He also contends that on October 2, 2017, he

---

[3] In ECF 4 at 2, ¶ C, plaintiff seeks the return of his Black's Law Dictionary. However, he states in ECF 12-1 at 1 that the book has since been "returned" to him, following "completion of the disciplinary segregation sanctions . . . ." *Id.* Therefore, this request is moot.

[4] Scott S. Oakley, the former Executive Director of the Inmate Grievance Office ("IGO"), was not served with a copy of the Complaint and has filed no response. The IGO has jurisdiction over prisoner grievance complaints against DPSCS officials and employees. As noted herein, Shamsud'Diyn did not file any administrative proceedings complaining of the outcome of his adjustment hearing. Thus, the IGO played no role in resolving issues raised herein. Accordingly, Oakley shall be dismissed from suit.

2

was served with additional Inmate Rule Violations in two separate cases: Case 2017-071 & 2017-072. ECF 1 at 1.

At the time plaintiff filed this complaint on November 6, 2017, he had not received a hearing on any of the violations.[5] This delay, he claims, violated state administrative law and other authorities. *Id.*

Specifically, Shamsud'Diyn states that DPSCS employees violated COMAR 12.02.27.12B(3) by failing to present him for a hearing within seven days. *Id.* at 2-3. Further, he contends the seven-day time requirement is mandatory and that the failure to comply is a flagrant violation of administrative law and a reckless disregard for his rights. *Id.* at 3. According to plaintiff, the cause of the delay must be documented and that "the administrative law blunder and backlog" of institutional cases does not constitute "exceptional circumstances" within the meaning of the COMAR regulation, sufficient to excuse the delay. *Id.* at 3.

In his supplemental complaint, Shamsud'Diyn claims that each day spent beyond the seven-day COMAR rule is "punitive segregation." ECF 4 at 2. Further, he states that due to his "punitive [housing] status," his property was withheld, including his Black's Law Dictionary and other personal property, in retaliation for his exercise of his constitutional right of access to the courts. *Id.*

In his Opposition, Shamsud'Diyn argues that the legal papers confiscated from him on November 15, 2017, during his transport for a court appearance, included "witness information, statements, and other information" relevant to his institutional charges, and

---

[5] The hearing was held on December 19, 2017. *See* ECF 8-3 at 11.

left him no choice but to plead guilty to those charges. ECF 12-1 at 1-2.[6] Although the claim regarding the loss of paperwork during the November 2017 transport was not added as a supplemental allegation in this case, Shamsud'Diyn argues that the confiscation raises a genuine dispute of material fact, requiring additional discovery, including testimony of Corporals Brunk and Hoffman, who could not find the paperwork after Shamsud'Diyn returned from court. ECF 14 at 1. However, Shamsud'Diyn acknowledges that Corporal Josh Rowland "did not confiscate the papers in a vindictive or retaliatory manner," but took them because of the "metal binders." *Id.*[7]

B. Defendant's Arguments

The record evidence submitted by Moyer provides a somewhat different version of events.

On September 17, 2017, prison officials convened an investigation into a suspected altercation between Shamsud'Diyn and a fellow prisoner. During the investigation, Shamsud'Diyn was placed in administrative segregation pending adjustment ("Admin Seg PA") housing. ECF 8-2, Declaration of Brian Bell, Correctional Case Management Specialist, ¶ 3; ECF 8-3, Declaration of Tina Hull, Secretary in the Warden's Office, with attachments, at 16.

Ten days later, on September 27, 2017, while the investigation into that suspected altercation was still ongoing, Shamsud'Diyn was issued rule violation notice 2017-070, in regard to an unrelated incident involving two letters he admitted to writing that included threats of

---

[6] Plaintiff provides no details as to who his witnesses were, what relevant evidence they might have provided, or what "other information" relevant to his institutional charges might have entailed.

[7] Corrections personnel do not believe the paperwork was ever handed over to Rowland. ECF 13-1 at 2, ¶ 6. But, they do not dispute that it is now lost.

4

violence towards another prisoner. ECF 8-2, ¶ 4; ECF 8-3 at 3. As a result, plaintiff remained on Admin Seg PA. ECF 8-2, ¶ 4.

On October 2, 2017, Shamsud'Diyn incurred two additional rule violation notices, 2017-071 and 2017-072, for assault and for disobeying orders, respectively. ECF 8-3 at 5, 8. The investigation that initially led to Shamsud'Diyn's placement on Admin Seg PA was found to be unverified, and he was not charged with any rule violation with regard to that incident. ECF 8-2, ¶ 3. Nonetheless, Shamsud'Diyn remained in segregation pending the outcome of the three cases involving rule violations. ECF 8-2, ¶ 5.

The rule violation cases were consolidated for hearing, which was held at MCTC on December 19, 2017. ECF 8-2, ¶ 9; ECF 8-3 at 11. Plaintiff was advised of his right to waive a hearing and to plead guilty. He elected to waive his right to a full hearing on the merits and pleaded guilty to eight rule violation charges stemming from the three cases, pursuant to a plea agreement. ECF 8-3 at 12-14. According to the plea agreement, the hearing officer imposed the recommended penalty of 90 days disciplinary segregation, effective from September 27, 2017 to December 25, 2017. *Id.* at 14. The institution had also requested revocation of 90 good time diminution credits, but records indicated there were none to take. *Id.* at 15. Moreover, should Shamsud'Diyn accumulate good time in the future, the credits will not be retroactively revoked. ECF 8-2, ¶ 8.

Shamsud'Diyn returned to general population housing on February 1, 2018. *Id.* Between September 27, 2017 and February 1, 2018, he met with his prison case manager approximately ten times. ECF 8-2, ¶ 7. During these interactions, Shamsud'Diyn did not mention that he was deprived of his Black's Law Dictionary. ECF 8-3 at 1, ¶ 3.

5

Record evidence is also presented with regard to Shamsud'Diyn's claim of confiscation of papers during his court appearance of November 15, 2017. Transportation was provided by Correctional Officer Josh Rowland, who avers that prisoners are advised at the time of transport that they are not permitted to carry legal paperwork unrelated to the case for which they are being transported. ECF 13-1, Rowland Declaration, ¶ 4.[8] Prohibited paperwork is confiscated, placed in a bag with the prisoner's name and DOC number, and held at the institution until the prisoner returns. *Id.* ¶ 5. No record or logbook of any confiscated paperwork is kept while the paperwork is temporarily stored. *Id.* Rowland cannot recall any interaction with Shamsud'Diyn, and found no notation in his notebook that he confiscated any paperwork from Shamsud'Diyn *Id.* ¶ 6.

Tull avers that Shamsud'Diyn did not file an Administrative Remedy Procedure ("ARP") complaint regarding his Black's Law Dictionary or confiscated paperwork affecting his rule violation hearings or this court case. ECF 13-2 at 1, ¶ 3.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 12. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider

---

[8] Shamsud'Diyn was transported for three previous court appearances in 2017. DOC personnel state that each time plaintiff was taken to court, he would have been advised in advance about the transport rules prohibiting legal paperwork unrelated to the scheduled court appearance. ECF 13-2, Declaration of Tina Hull, at 16.

6

matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448-49; *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC v. City of Salisbury, Maryland*, 672 Fed. App'x 220, 222 (4th Cir. 2016) (citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was

7

granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (hereinafter, "*Harrods*") (quoting *Evans v. Tech's. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, [he] cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561. But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need

for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). The failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," when the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit,'" and if the nonmoving party "was not lax in pursuing discovery." *Harrods*, 302 F.3d at 244-45 (citation omitted).

Plaintiff has not filed an affidavit under Rule 56(d). And, I am satisfied that it is appropriate to address defendant's Motion, which relies on matters outside the pleadings, as a motion for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841

9

F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Moreover, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

The court is mindful that plaintiff is a self-represented litigant. Therefore, his submissions must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett,* 477 U.S. 317, 323–24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

A. <u>Secretary Moyer's Liability</u>

Plaintiff has not alleged that Moyer himself is responsible for his placement on segregation or lack of access to paperwork. Instead, he seeks to impute liability to Moyer based on the actions taken by correctional staff who worked within the agency under his supervision.

Moyer contends that he had no personal involvement in any alleged wrongdoing, and thus incurs no liability under 42 U.S.C. § 1983. He is correct.

Shamsud'Diyn's claim against Moyer is, at most, based on a theory of respondeat superior. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of

*respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Under § 1983, supervisory liability must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Shamsud'Diyn does not provide any nexus between the alleged wrongdoing and Moyer's administrative role as head of the DPSCS. Therefore, Moyer is entitled to summary judgment.

Although Shamsud'Diyn failed to name proper defendants, this Court shall address his due process claim and his claims relating to retaliation, conditions of confinement on segregation, and access to courts.

  B. <u>Due Process in Disciplinary Proceedings</u>

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).

In prison disciplinary proceedings that implicate a possible loss of diminution credits,[9] a prisoner is entitled to certain due process protections, which include: (1) advance written notice of the charges; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Shamsud'Diyn cites the *Accardi* doctrine in support of his argument that his adjustment convictions must be declared void because prison personnel failed to follow a COMAR regulation governing a deadline for adjustment hearings. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (failure of federal agency to afford an individual procedural safeguards required under its own regulations may result in invalidation of ultimate administrative determination). *Accardi* involved a federal agency violating federal law and was filed in the context of a mandamus action under 28 U.S.C. § 2241.

The instant case, however, concerns a violation of State of Maryland regulation. In the context of a § 1983 action, relief would be available under the ambit of violation of federal (not state) regulation or, as in *Accardi*, a lack of an independent decision maker. Here, there is no

---

[9] Shamsud'Diyn was exposed to a loss of good conduct credits. But, he had none, and therefore none was taken from him as a result of his guilty plea.

evidence that plaintiff was deprived of an independent decision maker.[10] Plaintiff received all the protections afforded a prisoner under *Wolff*. *See Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due.").

Shamsud'Diyn's allegation that a COMAR regulation governing a deadline for adjustment hearings may have been violated does not equate to a due process violation based on the facts of this case. Shamsud'Diyn does not indicate how delay in scheduling the adjustment hearing at which he pleaded guilty resulted in prejudice to his defense. Moreover, it appears that, by pleading guilty to the rules violations, plaintiff waived his challenge to the delay. And, in any event, there was no apparent harm caused by the relatively brief delay. Additionally, Shamsud'Diyn does not provide any explanation as to the evidence allegedly contained in the lost paperwork, nor does he suggest how this information was relevant to his defense or why the information could not be recreated.

C. Retaliation

Shamsud'Diyn implies that prison personnel displayed retaliatory animus in several ways: first, by seizing his personal property, including his Black's Law Dictionary, when he was placed on segregation; second, by seizing legal paperwork when he was transported to a court appearance; and third, by keeping him on segregation pending an adjustment hearing that was delayed, thus converting his housing status from administrative segregation to punitive segregation and subjecting him to harsher conditions of confinement.

---

[10] In any event, a due process violation is not always found where a violation of such rules occurs. *See Riccio v. County of Fairfax,* 907 F.2d 1459, 1466 (4th Cir. 1990) ("[A] state does not necessarily violate the constitution every time it violates one of its rules.").

14

Retaliation against a prisoner for exercising a right of access to courts states a cognizable constitutional claim. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). The prisoner, however, must show that his litigation activities were the actual motivating factor for such adverse action. *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979). And, the failure to show that retaliation had an adverse impact on the exercise of a constitutional right defeats the retaliation claim. *Am. Civ. Liberties Union of Md., Inc. v. Wicomico Cty*, 999 F.2d 780, 785 (4th Cir. 1993).

Shamsud'Diyn implies that his Black's Law Dictionary was removed from his possession at the time he was placed on administrative segregation in order to thwart his ability to defend himself in adjustment proceedings. Shamsud'Diyn does not suggest how the lack of a dictionary impeded his defense and, in any event, the dictionary and other personal property were returned to him on December 25, 2017, when Shamsud'Diyn completed his segregation sentence. ECF 12-1 at 1.

Shamsud'Diyn next implies that the seizure of documents on November 15, 2017, during his transport to a court hearing, led to his inability to defend his actions regarding the rule violations and compelled his decision to plead guilty to those violations. Specifically, Shamsud'Diyn argues that he was "unable to adequately defend against the allegations...due to the absence of witness information, statements, and other information that was confiscated." ECF 12-1, at 2.

The uncontroverted records of the adjustment hearing do not support a finding that Shamsud'Diyn sought to name witnesses or present evidence. Instead, these records indicate his willingness to plead guilty to the violations in return for a "time served" sentence. Shamsud'Diyn's 90-day segregation sentence was back-dated to run from September 27, 2017,

the date on which he was charged with the first rule violation, to December 25, 2017, one week after the adjustment hearing on December 19, 2017. ECF 8-3 at 14.

Nor does the record support Shamsud'Diyn's claim of retaliation designed to impede his ability to defend his rule violation notices. At most, assuming the paperwork was lost, corrections personnel negligently failed to preserve his paperwork. Such negligent interference with the right of prisoner access to the courts does not state a cause of action under § 1983. *Pink v. Lester*, 52 F.3d 73, 74 (4th Cir. 1995); *Daniels v. Williams*, 474 U.S. 327, 336 (1986) (overruling *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972) to the extent that *McCray* established cause of action for negligence under First Amendment for such interference).

Finally, Shamsud'Diyn alleges that he was not provided the limited amenities afforded those placed in segregation housing pending adjustment proceedings but was instead subjected to punitive segregation conditions. He seeks damages for each day of such confinement caused by the delay in scheduling his adjustment hearing. His argument is couched in terms of a protected liberty interest in remaining free from punitive segregation restrictions pending an adjustment conviction.

A protected liberty interest arises where there is an imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). The inability of plaintiff to obtain some of his personal property, including his legal dictionary, is not a sufficient hardship.

In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). In *ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993), the Court said:

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

In the prison context, retaliation claims are sometimes treated "with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d at 74). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). Conversely, a "complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death," would be sufficient to state a claim. *See Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir. 1986).

Plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). *See generally, Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Such evidence is lacking. Nor is there any indication of adversity. Even if the court were to conclude that

plaintiff's segregation housing was "punitive," rather than administrative, Shamsud'Diyn received credit for the time served pending his adjustment hearing.

## IV. Conclusion

Shamsud'Diyn has not established liability on the part of Moyer, nor has he demonstrated a violation of his constitutional rights based on his placement on segregation, adjustment conviction, or loss of property, including legal paperwork.[11]

Summary judgment shall be entered in favor of Defendant Moyer by separate Order.

June 18, 2018　　　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[11] As adequate grounds for summary judgment exist, defendant's qualified immunity argument shall not be addressed.